Our next case for argument is 23-1978 Bannister v. United States. Good morning. Chief Judge Moore, may I please support Nathan Mammon on behalf of Tracy Bannister. Congress enacted the Survivor Benefit Plan to make sure a service member's spouse has support when he dies and to assure no spouse is surprised to learn that she is left without that support. The statutory language is clear and careful in its requirements. Here, Tracy Bannister has been improperly denied the Survivor Benefit Plan annuity of her husband, General Bannister. There are two reasons as a matter of law those benefits are owed to Mrs. Bannister. First, General Bannister elected Tracy Bannister to receive his SBP annuity, and that election controls its binding. Second, even if General Bannister's election did not control or did not exist, Tracy Bannister was the default beneficiary under 1438. There's a court order here, right? And there was an agreement. And the statute says under those circumstances, and I'm talking about D-3A, may not pay an annuity on the paragraph 102. That's pretty strong language. The statute goes on, Judge Lurie, and the full statute is so that a fault under 1448-D is to the current spouse. 1448-D-3 says here's the exception when it goes to a former spouse. It's one sentence. It says if you meet these circumstances, so there's a court order or there's been an election, may not pay the current spouse, pay the former spouse, but then at the very end, part of the same requirement, it says if there has been a deemed election compliant with 1450-F-3. That's a part of the statutory language, that entire section there. And so I think what the court below did, the mistake was stopping when it got to a subparagraph of the statute and not finishing the sentence. Why is that a mistake? If that subparagraph is as clear as the trial court said, you may not pay the current spouse under these circumstances, which we all agree are present. Why do you need to read on and see what happens to the former spouse? Because we don't agree. I certainly would not agree that the circumstances are present, because again, it's a single statutory sentence here. And so what circumstance has to be present? There has to be a court order or an actual election, but the last clause that applies across the board, and you can see this on page 14 of our reply brief, the last clause requires that there be a deemed election. That's a part of that. The other way to put it then is why not read 1448-D-3-A as the sole provision they're dealing with the current spouse and dependent children, and 1448-D-3-B only deals with the former spouse, and this is a case brought by the current spouse. So we don't have to worry about the former spouse. Because it's a complete requirement, a complete section, and the result that I don't think the statute would support is that you can end up with no spouse, no one getting the annuity, but setting that aside, the reason why I think that's not the right result and statute doesn't allow that is because it's a complete sentence that it's not that just there is a court order or that there was an election, that you have to comply with the requirements of 1450-F-3-2. Why it matters is because you can't stop at 1440-A because you haven't met the requirements even of 1440-A because it's qualified, it's restricted by at the end of the statute. So let me ask you a question. You read B as being a complete sentence, which means that you think there has to be a deemed election, i.e. the former spouse has to have submitted a written something, the court order, right, or the divorce agreement. What are the two things? It's a court order or a separation agreement. And it had to have been submitted in a timely manner as required by 1450-F-3, which I think is within a year of the agreement, is that right? Okay. Now is your view is that submission is required within a year was an express choice that Congress made because otherwise the secretary could really be in a pickle, couldn't they? I mean, couldn't you end up with, if it didn't require, like how in the world is the VA supposed to know that there might be some spousal agreement hanging out there from some state court endorsed or whatever. And if they don't know about it in a timely fashion and Congress decided that timely when it's ordered, then what they might do is pay out the current spouse when, in fact, they should have paid out the former spouse, but they didn't know. And you know how hard it is to claw back money for people, right? Really hard to claw back money. So do you think maybe Congress did this quite intentionally to ensure that the VA knows in advance who it's supposed to pay the money to before they pay it out? Absolutely. Absolutely. And I think it goes beyond that, that the VA knows and the DOD knows, is that the service member's spouse knows. Everyone knows. Everyone's on notice because one of the things that's also clear in 1448, if you read the whole statute, is the amount of times it makes clear we want current spouses to have notice. If a service member elects a former spouse or elects someone else or elects not to participate, the current spouse has to be notified. If he elects a former spouse, current spouse has to be notified. This is another provision that I think is a very clearly crafted statutory scheme that Congress wanted to make sure former spouses could receive this as a part of a state divorce decree, but put a very important restriction on that. But that has to be done within a specific time so that it's a part of the record so that we don't end up in this exact scenario where a current spouse dies or a current service member dies and his spouse finds out for the first time that there had never been an election. He knew at least in 2002 that there hadn't been an election of these benefits. And all of a sudden, this very important annuity type of life insurance doesn't go to this service member who thought that that's what he would be leaving his spouse with. I would like to believe that Congress was being that clear, but I'm struggling with the may not pay in A. How do you square that Congress clearly anticipated this situation and clearly intended for the current spouse to receive the money if the former spouse didn't within a year do what she had to do with Congress's language, which seems pretty clear to me that if a member described in paragraph one, we all agree we have such a member, right? Yes. Okay. Is required under a court order to provide an annuity to a that's applicable here that Major General Bannister was required to select his former spouse, correct? I'll accept that. I have a caveat on that, that state law, Georgia state law, and those are Georgia's wars, but Georgia state law also recognizes that you must comply with the deemed election provision. So if I start by putting a caveat on that. But there is a Georgia court order that he provide the annuity to his former spouse upon becoming eligible. There was a court order. Yes. Okay. I, I, the secretary in that circumstance may not pay an annuity under paragraph one or two and paragraph one or two are the only way that Miss Bannister becomes eligible for this. But your honor, it goes on to say, but I understand what it goes on to say, but what I've said so far is, is correct. She only can become eligible under paragraph one or two, right? That is your client. She can only, she, she becomes eligible under paragraph one or two, if at all, the one or two that are referred to in, in 3A. The, sorry, I'm trying to understand, I, you know, the, the current spouse, my client, is eligible by default. And so the only point that the former spouse, so what, what 1448 D3 is getting at is, when does this not go by default to the current spouse of a member who dies on active duty? When did it go to a former? I'm sorry. So just to be clear, why is the answer that it doesn't go to the former spouse under the circumstances here where Congress said clearly, I don't know why, but they clearly said that the secretary may not pay an annuity to the current spouse in this circumstance? But with respect to, I don't think that's what Congress said, because I think Congress, I think you cannot parse the statute and put a period at the, at the end of 3A. It goes on. It's a single statutory requirement. But it doesn't go on and say, and if the conditions of B are not met by the former spouse, then go back to the current spouse. It doesn't, it doesn't expressly say that. So how can we read it that way? Well, I think that's the clear logic of the statute, that the only way, the logic of 1448 D3 is, when do you not pay the current spouse, is if the former spouse qualifies. And the logic of, if you read the whole statute provision in paragraph three in toto, and together, it has to be interpreted together, you have to fulfill all of D3 in order for it not to go by default to the current spouse. And so I don't think you could- One says, D1 says, shall pay to the current spouse. Shall, not may, shall. And D3- You only get out a shall if you meet D3. Correct. And, but D, and I made a point of D3A says may. So if you take a distinction, even under Judge Stark, what Congress language used, they were clear that D3A wasn't a, a prohibitory command of shall not pay. It's a, it even uses different language in that statute, the need of when you shall pay the former spouse is if you then qualify. You're arguing that when Congress said the secretary may not pay an annuity, it meant the secretary may or may not pay an annuity. My argument is that when Congress made that, they, they, A is a qualifier. It may not pay if you meet B. If you, if the former spouse qualifies and gets the annuity because there was a deemed election as required under B. Well, and let me ask, let me ask a question. If you're not right, what would be the crazy ramifications of if A stood alone, if A was not tethered to B, then A would seem to unravel entirely the shall of D. Wouldn't it? Any time somebody had a previous marriage, the annuity would be up for grabs, regardless of circumstances. If 3A stood alone, that just because there's a former spouse, Congress may not pay it to the current spouse, all hell breaks loose. Exactly. I mean, it's a, it's a, I can't underplay the, um, the landmine that this creates for military family law, because who knows how many spouses may, former spouses may be out there, may have not submitted stuff, and, and the service doesn't know, the current spouses don't know. It, it departs from what Congress clearly intended by the statute. Yeah, that's the issue with the who knows how many former spouses might be out there. I mean, I guess the guy's dead. So, since we're only talking about a dead person, really, maybe it's possible. What I mean, Yolanda, is who knows how many former spouses of various service members, like this, this goes beyond this case. This is a very important issue of military family law that goes far beyond this case, goes far beyond here, a family, a general, a widow who's very sophisticated in that regard. And this is the landmine that people who, service members who aren't sophisticated, their families are going to be perked by the Court of Federal Claims decision below. If I can make one other point that I think you could even, you know, don't even have to get to D, is that here, D, D presumes there has not been an election made. And so this is the default that applies if an election has been made of the current spouse, or if the election has been of the former spouse. Don't even go there. This next other argument you're about to make is a bad one. Just save the rest of your time for a moment. I'll save my time. Mr. is it Angulo? Angulo. Mr. Angulo. Thank you. Mr. Angulo, please proceed. Good morning, Your Honors. May it please the Court. Because the relevant statute states unequivocally that the government may not pay an annuity to Lieutenant Colonel Bannister, this Court should affirm the decision of the trial court. Wait, why does it say it may not pay? What are you talking about? So under 1448 D, which explicitly... Do you agree that D1 has an automatic presumption that it will go to the current spouse? Just D1 standing alone? The default is that it goes to the surviving spouse, yes, Your Honor. So D1, it shall be paid to the surviving spouse. So the only way it doesn't go to the surviving spouse is if D3 kicks in, is that correct? For the purposes of this case, Your Honor, that's correct. Okay. And that exception is made explicit in the first four or five words of D1A, which states, except as provided in paragraph 2B. That's a Scrivener's error, a typographical error that both parties recognize that should say paragraph 3B, excuse me. And unfortunately, Congress hasn't corrected that. Okay. So the only way it doesn't go to the surviving spouse is if 3B applies. That's it. The only way is if 3B applies, correct? No, Your Honor. If D3 applies. That's what I meant. D3B. No, Your Honor, just D3. Wait, no. You said except as provided in paragraph 2B should be 3B, right? So except as provided in paragraph 3B. That's what you said. You said everyone in this case agrees the Scrivener's error is that D3B should go to the surviving spouse. It's not 2B, it's 3B. That's right. Okay. So it goes to the surviving spouse unless 3B applies. That's right, Your Honor. But we also look at 3A, which as Judge Stark pointed out, states in very clear language that this may not be paid to the surviving spouse. That's described in paragraph 1. But then it says but and moves on to be. Is be complied with here? Yes, Your Honor. Our position is that it is complied here. We look at the preparatory language of D3. And D3 applies when we have a member described in paragraph 1. And as we all recognize, we have a member described in paragraph 1. And then it moves on to say that it is required under a court order or a spousal agreement to provide an annuity to a former spouse. And that's exactly what we have here. We have a service member who was required under a court order to provide an annuity for a former spouse. But do you agree with that? I want you to answer Judge Lurie's question. I don't want you to read me the preparatory language in 3, which is not within B. Judge Lurie asked you specifically, does 3B apply here? So tell me in the language, look at the language of 3B and tell me how that applies here. Right. And I was going to move on to say that the language that immediately begins in D3B is that under those circumstances that are described in the preparatory language of D3, the secretary, quote, shall pay an annuity to that former spouse as if the member had been a participant in the plan. So, end quote. So even if they hadn't made the election that they had agreed to make in the spousal agreement and divorce decree, even if they didn't do that, we treat it as if they had done so and made the election. Under certain circumstances. And what are the 3B circumstances? Well, D3, as we state in our response brief... 3B. I want you to focus on 3B. What are the 3B circumstances? So as we state in our response brief, there are three different routes that we look at when determining whether the former spouse gets the annuity. One is if the service member has, if there's a court order requiring them, in that case they shall pay to the former spouse. Number two is if they made that election, if the service member made that former spouse election, then of course we honor that and give it to the former spouse. And then the third alternative is that everything after that or clause in D3B, which states, or in accordance with that election, as the case may be, if they received that one... But there wasn't an election, was there? In this case, there wasn't that one-year election. But B says, as if there had been. That's right. So even if, even though the service member in this case didn't do what he had agreed to do 20 years ago, the government will treat it as if there had been such election. In that case, the former spouse gets the annuity. Why should we not read that as modifying all of 3B? You need us to sever it off and only apply in limited circumstances. But why isn't the more natural reading that it modifies all of 3B? Well, it's another layer. If we look at the history of Congress trying to kind of balance the tension between surviving spouses and former spouses, and we look at the Uniformed Service Former Spouse Protection Act, we see Congress providing just one other instance of protecting interests of former spouse. And so it's just clarifying that if there's a deemed election, we will also respect that deemed election that's made within one year. But that is not required, that one-year deemed election is not required under the statute, because if there is this divorce decree, which there was in this case, they're going to treat, they're going to pay the former spouse as if the service member had done what he had agreed to do through that spousal agreement. Let's look at the fourth line of B. If the secretary receives a written request from the former spouse concerned that the election was deemed to have been made, did that occur? No, Your Honor. Ms. Erickson did not make that one-year deemed election. Does that officiate all of B? No, Your Honor, it doesn't. And hence, A? No, well certainly not A. I'm sorry, Your Honor, I cut you off. Or does A stand alone? A stands alone. I think there's two responses to that. It doesn't vitiate B, for reasons I'll explain in a minute, but it certainly doesn't vitiate A. We look at A, it states plain as day that the secretary may not pay an annuity under paragraph 1, colon, but. Okay, wait, wait. So the secretary may not provide an annuity under paragraph 1 or 2. You think that gives the secretary unfettered discretion to just choose not to pay? Well, the language states that the secretary may not pay that annuity. For any reason? As the trial court found below, that that is dispositive of. For any reason, the secretary could decide, I'm just not going to pay it. Well, a reason is provided here in the statute, that in order to receive a government entitlement, it needs to be authorized by statute. And here, the statute that the appellant in this case is relying upon says that the secretary may not pay the annuity. No, in D1, it says shall pay, right? The current spouse is the default recipient. I don't know what to make of that may pay thing in 3B or 3A, but it sure can't unravel D1 that sets out the automatic payment to a current spouse. Well, so I understand appellant's position to be that the government's reading, or the trial court's opinion rather, can create this absurd circumstance where no one gets paid. But our position would be it's actually appellant's position that creates this absurd circumstance where the government would be paying an annuity under a circumstance where the statute says that the annuity may not be paid. I don't understand. How is that absurd? The statute says must pay, shall pay to the existing spouse. Then there's this weird may language later on, which I don't understand. You're saying give them the authority to not pay for any reason at all? Well, it says that in these circumstances, to go to their point about a landmine, this is not a landmine of situations. This is when a service member agrees through divorce to pay somebody. In those situations, if they don't honor that agreement, the government may not pay to the surviving spouse. But do you not see the landmine that I think exists? I think that Congress put this if clause in here, and I think you should be standing here agreeing with me. Because if you're not, I mean, I don't know how often, I mean, you're so young, maybe you haven't seen a lot of these cases. I've seen a lot of these cases where the government inaccurately pays to someone. How many of those cases do you think the government recoups the money? Not often. Not often. And so I think the if clause is because the government, who is going to pay out an annuity as soon as a veteran dies, this is one of the few things they do really promptly, actually. And they pay it out really quick. And the default is they pay it to the surviving spouse. So I think Congress had immense wisdom when they said, and that's going to happen unless the former spouse, which might have some court order from a state court marital settlement agreement that there's no way the VA could ever know about, has actually filed that agreement in a timely fashion with the VA. Because if not, how is the VA supposed to know to hold up the payment to the current spouse? I think that this was one of the wisest things that Congress could have done to ensure that widows get money promptly and the right widow gets the money promptly. So where I think the landmine is is in the government's view that that if clause doesn't actually create any burden at all on the former spouse to timely notify the VA of her entitlement. I think this provision is really wise when read the way their argument should be read, when read the way I just explained it. And that's the landmine that I see in your construction is that I think you're going to put the VA in a terrible position. Well, if the service member here had survived into retirement and that deemed election was required under the law and she failed to do, then we would look at that one year period and say that the former spouse failed to do so. But the language that we see here, may not pay an annuity under paragraph one, that doesn't appear in 1450F3, which is what we look at if the service member becomes a participant. And in that case, we're determining whether the default rules for spousal coverage apply or not. So that language, may not pay an annuity under paragraph one, doesn't appear in 1450F3. But it appears in this provision, which plainly applies to service members who die while on active duty. One of your problems is the first thing you did when you stood up and talked about the Scribner's error is kind of give that away. I don't think it actually carries the water you'd like it to carry anyway. But you stood here a minute ago and said everyone agrees 2B is a type O and it should be 3B. So what D1 says is except as provided in paragraph 3B, the secretary shall pay an annuity to the surviving spouse. So I'm not sure what that broad may language is in A, but you stood up here and you said everyone agrees with the Scribner's error and that the only exception to the current spouse getting it is if 3B is met. In that case, Your Honor, I guess the absurdity would be the concern that we're reading the statute to say that they must pay and they also may not pay in the same instance. Well, I don't think so because I think the may not pay in A is tethered to B. I don't think A was separate from B under D3. And I think B says may not pay it to that first spouse if these conditions we've articulated in B are met. And so I think looking at the entitlement to Ms. Erickson, the former spouse, does raise some interesting issues of syntax and grammar. But I think it's much clearer as to... I want to be clear. I feel really bad for the former spouse. Under the divorce decree, she was supposed to get this money. She was. But, you know, we've got that King case, by the way, that says the federal rules trump a state divorce decree unless she filed it with the VA, which she didn't. And that's the King case that already exists in state law. All right, so I feel bad for that former spouse. I really don't understand the government's position in this case because if I were to affirm the rule you want, the VA is going to be... Are they supposed to know when these private divorce agreements are made in all of the different states in the country with all of the different service members? The reason for the one year you must file this decree, the spouse must, is with the VA on notice so they don't pay this money out to the current spouse, which they're going to do quickly, which they're really good about. And then they've got to try and claw it back afterwards. So why in the world do you want me to adopt the construction you're arguing for? I understand why, in this case, the equity favors the first wife. I get that. But in the scheme that the VA has to apply, the construction that I think is the correct one sure does seem like it's going to help the system a heck of a lot more than the construction you're arguing for. We're taking this position, Your Honor, not because of some programmatic benefit but because of the clear language that the statute requires this position. Subsection A stands alone, as Judge Stark suggested. It's set off by a semicolon, not a simple comma, and then it goes on to say but. But it's followed by a but. And the but clause isn't met because of the if. Isn't that right? Well, that's certainly Appellant's position, but that's not the government's position and that's not the position of the trial court below. We're listening to positions, but we've got to interpret the statute. And A is followed by a but, and B is followed by an if, which doesn't apply, which isn't met. So, again, that is Appellant's position. But we would, as we have, strenuously contest the position that the if clause, which feels very much like a few good men, go for it, at the very end would go back to modify that B clause, which, again, stands on its own and stands apart with not a comma but a semicolon. Do you deny, though, that your interpretation, which is the Court of Federal Claims' interpretation, could lead to circumstances, possibly including here, where neither the current spouse or the former spouse are eligible to receive these benefits? Well, it wouldn't here because Ms. Erickson is simply left in the state that she was receiving the annuity. But in the future, potentially, and I'm not sure, and I know I see him out of time, I'm not sure that is as absurd as Appellant suggests it is. But it is a result that is implied by the government's interpretation. Well, by Appellant's interpretation. No, by your interpretation, there will be circumstances where, if the former spouse doesn't file the court decree within a year, but all these other circumstances apply, then the result will be that neither the current spouse is eligible because 3A, I still think fairly clearly says, may not pay an annuity, so the secretary may not pay to the current spouse, but yet the former spouse didn't do what she had to do or he had to do under 3B. So the secretary shall not pay them either. No, Your Honor, because under 3B, the former spouse is entitled because we pay it to her as if the member had made the election. So it's Appellant's position that's actually leading to that absurdity, not the government's position. Thank you, Your Honor. I would ask that you affirm the lower court's decision. Thank you. I'd like to start with the government's interpretation of 3B, that there are three separate routes for the former spouse to be entitled to the benefit, that there's a court order, service member elects, or I think as the government phrased it, everything after the Orr Clause. That reading basically renders superfluous the If Clause, because if there's a court order under the government's interpretation, that court order alone is enough no matter what happens, whether it's ever been provided to the secretary or not, then there's no reason for 1450 F3 at the very end of the statute, because the court order controls. But the If Clause doesn't come into play unless the But Clause brings B in and means that A isn't absolutely standing alone by itself. Does A stand by itself? No. Does B bring in... But brings in B, which has the If Clause, which isn't met.  Is that your point? Right. The But brings in the final statement. So the prefatory language of D3, if we're in this world, then it goes into A, then you would not pay the current spouse, but you would pay, you shall pay the former spouse, if there's been a compliance. And so if you think of a decision matrix, you have to go through this statute, you have to go through all elements of 3, paragraph D3, in order to meet it. Because as counsel acknowledged and Chief Judge Moore's questions went to as well, we have D1, and the default is that the current spouse shall get this annuity. And then this is the exception to that default, and that's where there has to be compliance. It has to be compliance because that notice and providing that court order to the service, to the VA, is so important to make sure everyone is on notice of what the requirements are, and that no one ends up without these benefits. It's not clear language. I think it's clear. I understand your Honor's point. I think it's carefully worded language, is what I would say. It's a little convoluted, but I think Congress was trying to be very careful with this to make sure that, because if you go back, and the court doesn't need to rely on legislative history, but if you go back and look at the reason Congress enacted this, it's very clear. They were so worried about service members ending up. One needs a GPS here, a Waze. Fair enough, Your Honor. To go through the maze. So thank you, Your Honor. Unless you have questions, we ask that you reverse this. Thank both counsel. This case is taken under submission.